Marqis Kennon
# 296957 / 134061-C
P.O. Box 861
Trenton, NJ  08625-0861

**Currently Incarcerated**

**SUPERIOR COURT OF NEW JERSEY**
MERCER COUNTY - CIVIL DIVISION
Docket No: <u>L-695-22</u>

---

**MARQIS KENNON,**

    Plaintiff

    vs.

**STEVEN JOHNSON,** Administrator;
**BRUCE DAVIS,** Administrator;
**AMY M. EMRICH,** Assistant
Superintendent;
**JAMAL EL-CHEBLI,** Supervisor of
Chaplaincy Services;
**JAMIL HOWARD,** Supervisor of
Food Services;
**OCTAVIS MINGO,** Asst.
Supervisor of Food Services;
and **YEHUDA SPRITZER,** Jewish
Rabbi

    Defendants

---

<u>**CIVIL ACTION**</u>

<u>**VERIFIED COMPLAINT**</u>

---

<u>**COMPLAINT**</u>

**(1)**  Plaintiff Marqis Kennon, Pro Se, is presently -

and at all times relevant to this complaint - confined at

the prison known as New Jersey State Prison, located in the

City of Trenton that is located in Mercer County, New Jersey, says that:

(2) I am over 18 years of age and am presently an inmate in the care and custody of the New Jersey Department of Corrections(hereinafter **NJDOC** or **the Department**).

(3) I submit this Complaint upon personal knowledge, in support of relief for the harm and injury incurred as a direct result of Defendants violations of the United States Constitution.

(4) Defendant Amy M. Emrich was at certain times relevant to this complaint the Assistant Superintendent at New Jersey State Prison (hereinafter **NJSP**) with oversight of the Chaplaincy Department.

(5) Defendant Jamil Howard was at certain times relevant to this complaint the Supervisor of the Regional Food Services Operation at NJSP.

(6) Defendant Octavis Mingo was at certain times relevant to this complaint Assistant Supervisor of the Regional Food Services Operation at NJSP.

(7) Defendant Steven Johnson was at certain times relevant to this complaint the Administrator at NJSP.

(8)   Defendant Bruce Davis was at certain times relevant to this complaint the Administrator of NJSP.

(9)   Defendant Andrew Mcguire was at certain times relevant to this complaint a Protestant Chaplain at NJSP.

(10)   Defendant Jamal El-Chebli was at certain times relevant to this complaint the Supervisor of the Chaplaincy Department at NJSP.

(11)   Defendant Yehuda Spritzer was at certain times relevant to this complaint the Rabbi (Jewish Chaplain) at NJSP.

## PREAMBLE

(12)   This complaint is made after (15) years of repeated obstruction to Jewish religious access to the basic elements (also called ritualistic elements) of Jewish Religious observances by New Jersey State Prison staff, which all courts, New Jersey Statutes, regulatory law, policies and procedures recognize as rights that may not be violated; yet, the right to observe established religious obligations have in a pattern and practice been ongoing. This complaint will seek injunctive relief with compensatory and punitive damages for violations of New Jersey tort

laws, Statutes, and the New Jersey Constitution; as well as
Federal Congressional Acts and Constitutional Amendments
that continued year after year despite repeated, well-
written complaints that sought informal resolution rather
than resort to this complaint.

## STATEMENT OF FACTS

(13)   As a child, plaintiff had been abandoned by his
mother and father before the age of 5.  Because his
maternal grandmother had serious health problems, Plaintiff
stayed with her.  He learned from his grandmother many
wonderful things, not least of which was the value of
Jewish tradition and the religious obligation to G-d to
live a life that had great promise.  However, plaintiff's
grandmother died by the time he was seven.  The most
significant memories impressed upon his soul were those
experienced learning and then practicing the religious
observances from Passover to Passover.

(14)   As Plaintiff grew up, he strayed from religious
observance to a nadir in 2003, where he found himself in
NJSP and in need of rejoining Jewish religious life, which
found him involved in the Trenton Incarcerated Veterans

Group (later the prison law library) and attending Jewish Worship services at NJSP.

(15)  By the time plaintiff was sent to NJSP, New Jersey Statutes and case law – in keeping with Federal case law that was itself created by Amendments to the United States Constitution, specifically the First Amendment, provided convicted prisoners in the NJDOC the right to practice Judaism, which has very strict and specific policies and procedures mandating schedules commensurate to those dates and times.  All observant Jews throughout the world practice said Jewish religious observances; with some limitations to conform to a prison setting, yet in most respects the observances for those incarcerated was the same as for free persons practicing Judaism.

(16)  NJSP was for 40 years a model for many prisons in the United States under the aegis of Rabbi David Lev, and his father before him, for observant Jewish men to grow spiritually through a consistent, highly-structured Jewish services program and yearly observance of Jewish religious obligations.

(17)   After Rabbi Lev left NJSP in 2005, he was replaced by Rabbi Yehuda Goldenberg, until approximately 2008 when he was replaced by Rabbi Yehuda Spritzer.

(18)   Food certified 'kosher' is a main tenet of a religiously observant Jew.  NJSP upon the loss of Rabbi Lev, became very reduced; eventually only the barest Kosher food was allowed prisoners on the Kosher diet, which was nutritionally deficient; so plaintiff, as did other Jewish prisoners, stopped eating the kosher food provided for by NJSP, and only relied on the NJSP Administration to provide food during Passover each year where the special kosher diet foods purchased by NJDOC and provided by NJSP are certified "Kosher for Passover."  Thus plaintiff was placed only on the 'Kosher for Passover' diet list that defendants in this complaint were (and are) responsible for facili-tating and maintaining, or should have facilitated and maintained.

(19)   Since 2005, when Plaintiff first complained of the denial of the ritualistic elements necessary to observe Passover, including Kosher for Passover meals; he has lived in the same prison (NJSP), and was placed on the permanent Kosher for Passover list.  Yet, year after year plaintiff

has had his last vestige of Jewish religious observance

obstructed and or denied outright.

(20)  Each complaint made by inquiry and grievance, via

the Inmate Remedy System, repeatedly filed by plaintiff was

passed around in a circular manner by defendants year after

year, where no resolution was timely (or ever) made that

would actually preserve the required Passover religious

mandates.  At the same time defendants gave the appearance

of addressing the problem, while in reality nothing was

resolved or implemented to protect plaintiff's well

established rights to practice the mandated Passover

observances.

(21)  Each defendant has repeatedly been directly

informed that plaintiff was being denied mandated Kosher

for Passover food year after year, but were deliberately

indifferent.  After responding in writing to plaintiff,

defendants realized, or should have realized, that year

after year plaintiff was being obstructed from Kosher for

Passover food in a pattern and practice that can be plainly

seen; and was known, or should have been known, to each of

the defendants to have taken place.  However, no defendant

took any meaningful action to resolve each obstruction to

plaintiff's access to mandated Kosher for Passover foods
year after year from 2006 through 2021.

(22) Plaintiff intends to present to the jury and court
at trial clear incontrovertible **documentary evidence**, and
other additional evidence produced by each of these defen-
dants that will clearly establish violations of plaintiff's
rights under both state and federal laws and constitutions;
and will also establish that those rights were known by,
and in fact violated by, these defendants year after year
despite plaintiff's repeated filing of written complaints
via the Inmate Remedy System.

(23) Plaintiff's filings included inquiries, grievances
and appeals that all resulted in nothing being done to
protect plaintiff from repeated violations of his right to
practice mandated Jewish religious observances year after
year. At the same times, defendants were allowing other
Jewish prisoners the same religious observance access but
denyied that same right to plaintiff.

(24) Plaintiff has suffered year after year the pain
of this continual obstruction of the most important high
holidays and each Passover where plaintiff was prohibited
from Kosher for Passover foods, and access to the necessary

ritualistic elements of the Passover Seder, which has

caused deep, lasting, emotional pain from the loss of one

of the very last freedoms that are inviolate and inalien-

able even in a prison setting.  Plaintiff was obstructed

from his reasonable and established rights the religious

observance of Passover without a compelling government

interest - grounded in safety or security - or reason.

(25)  It appears that after years of complaints by

plaintiff of being obstructed from observing Passover and

other tenets of required Jewish religious observances, that

these defendants each made a conscious decision not to

comply with established policies and procedures to prevent

future obstruction of plaintiff's Passover and other

religious observances, through deliberate indifference and

or intentional indifference as a direct result of order(s)

instructing defendants not to develop these policies and

procedures that would prevent further obstruction of

plaintiff's rights to Jewish religious observance of

Passover and related religious observance matters.

(26) In the world of prison life there are no areas

that are not under very well-thought-out control.  As that

reality sinks in, it becomes very clear to intelligent,

rational human-beings that once a problem affecting a well

established fundamental right to religious observance (as

plaintiff has presented above) then-existing policies and

procedures should have been finetuned to ameliorate a

continued systemic obstruction thereof. Yet, here we find

plaintiff being so obstructed year after year without a

policy and procedure developed or provided at the facility

level in NJSP.

   **(27)** In the NJDOC, there are very exacting policies and

procedures that are developed by extremely controlled

written directives called Internal Management Procedures

(AKA **IMP's**). The development, content, signatories,

implementation and distribution of these IMP's are

controlled by a section of NJDOC Central Office called the

**APPM** Unit. Plaintiff provides this information for the

purpose of the lay jury-person or Court that may not know

that rules and regulations are promulgated by the NJDOC, in

order to guide its employees at NJSP, for every organized

activity that occurs within the NJDOC and NJSP. At trial,

plaintiff will be able to have these defendants produce

through subpoena and discovery mechanisms the very docu-

ments that will prove these defendants violated mandatory

policies and procedures that were established to prevent

the very obstruction complained about in this complaint;

whether such is determined at trial by jury to be simply

negligence, or intentional misconduct.

   **(28)**   There are (14) major components that comprise

religious Jewish life.  Plaintiff has attached to this

complaint a comprehensive document of **"The Code of Jewish**

**Law"**  -(hereinafter **CJL**)- which is a portion of a letter

provided to the then-Commissioner of the NJDOC -(Devon

Brown)- dated 1/12/2006, by a person who in 2006 was a

prisoner in NJSP.  This portion of that letter is a list of

(14) major areas of religious importance to an observant

Jew.  This list is attached to this complaint and marked as

**Exhibit** **"A"** and is provided for the jury and the court to

use as a guide for discerning Passover religious require-

ments.  This exhibit will also demonstrate the many

religious requirements observant Jews observe; through

which the plaintiff will also demonstrate that Passover

observance is recognized by the defendants; that the NJDOC

and NJSP is required to provide to all Jewish prisoners at

NJSP who had had their names timely approved and added to

the list for kosher for Passover foods; and access to the

required services for Passover worship.  This list is (4)

pages and is utilized herein as an exhibit as if fully

typed here in this complaint.

## CLAIMS

(29)  Plaintiff alleges, re-alleges and incorporates by

reference paragraphs (1) through (28) as if fully stated as

to the facts that support the following claims grounded in

United States Constitution, United States Statutes; and the

New Jersey Constitution, the New Jersey Civil Rights Act,

New Jersey Statutes, New Jersey Regulatory Laws and the

Code of Jewish Law ("CJL") violations:

## COUNT 1

(30)  The First Amendment of the U.S. Constitution,

through the Fourteenth Amendment, in preventing the obser-

vance of mandatory Jewish religious worship and preventing

equal protection of the law, both state and federal, that

are laws created to protect the free exercise of religion,

and protecting plaintiff from the failure to protect

plaintiff from defendants' obstruction of those religious

rights which are allowed to some persons in plaintiff's

class (Jewish congregation) in prison to receive religious worship in a meaningful manner while withholding meaningful religious worship in a meaningful manner from plaintiff.

## COUNT 2

(31)  Defendants have violated the Religious Land Use and Institutionalized Persons Act (**RLUIPA**), 42 U.S.C. §§ 2000bb-2(4).

## COUNT 3

(32)  Under the New Jersey Tort Claims Act (**Title 59**) and common law torts causes of action exist for failure to protect plaintiff's rights to religious observance through deliberate indifference and or negligence.

## COUNT 4

(33)  Supplemental Jurisdiction under the common law tort of negligence in denial of full enjoyment of access to Passover religious mandates by failing to ensure that plaintiff was properly provided with kosher for Passover foods by the negligent failure to act as required by established law.

## COUNT 5

(34)   New Jersey Constitution prohibiting religious discrimination.

## COUNT 6

(35)   New Jersey Civil Rights Law that prohibits religious discrimination and the free exercise of religion.

## REQUESTED RELIEF

(36)   Monetary damages in the amount of $8,000 each defendant.

(37)   Compensatory damages in the amount of $8,000 each defendant.

(38)   Punitive damages in the amount of $18,000 each defendant.

(39)   Injunctive relief to assure Kosher for Passover food and all ritualistic elements for Passover Seder is provided each year going forward, starting at once.

(40)   Fees and costs.

(41)   Attorney fees.

**(42)**   Appointment of a Special Master.

**(43)**   Any other relief this Court deems just and appropriate.

## CERTIFICATION

**(44)**   Marqis Kennon, Pro Se, hereby certifies pursuant to 28 U.S.C. 1746, that he has read the foregoing (15 page) (43 paragraph) complaint and knows it's content to be true and correct.

## JURY DEMAND

Plaintiff hereby respectfully demands a jury trial.

4/6/2022
_Dated_

Marqis Kennon,
Plaintiff *pro-se*

Appendix XII-B1

## CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| 1. ATTORNEY / PRO SE NAME | 2. TELEPHONE NUMBER | 3. COUNTY OF VENUE |
| --- | --- | --- |
| MARQIS KENNON | | MERCER |

| 4. FIRM NAME (if applicable) | 5. DOCKET NUMBER (when available) |
| --- | --- |
| | |

| 6. OFFICE ADDRESS | 7. DOCUMENT TYPE |
| --- | --- |
| MARQIS KENNON #296957 / 134061-C P.O. Box 861 TRENTON, NJ 08625-0861 | COMPLAINT |
| | 8. JURY DEMAND ☒ YES ☐ No |

| 9. NAME OF PARTY (e.g., John Doe, Plaintiff) | 10. CAPTION |
| --- | --- |
| MARQIS KENNON, PLAINTIFF | |

| 11. CASE TYPE NUMBER (See reverse side for listing) 005 | 12. HURRICANE SANDY RELATED? ☐ YES ☒ NO | 13. IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| --- | --- | --- |

| 14. RELATED CASES PENDING? ☐ Yes ☒ No | 15. IF YES, LIST DOCKET NUMBERS |
| --- | --- |

| 16. DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ Yes ☒ No | 17. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ☒ UNKNOWN |
| --- | --- |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| 18. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☒ YES ☐ No | IF YES, IS THAT RELATIONSHIP? ☐ EMPLOYER/EMPLOYEE ☐ FAMILIAL ☐ FRIEND/NEIGHBOR ☐ BUSINESS ☐ OTHER (explain) |
| --- | --- |

| 19. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ☐ No |
| --- |

20. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| 21. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
| --- | --- |

| 22. WILL AN INTERPRETER BE NEEDED? ☐ Yes ☒ No | IF YES, FOR WHAT LANGUAGE? |
| --- | --- |

23. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

| 24. ATTORNEY SIGNATURE: | Marqis Kennon — pro se | 4/6/2022 |
| --- | --- | --- |

Effective 10/01/2016, CN 10517_ps

page 4 of 5